Arlene MATTERN, on behalf of herself and all others similarly situated,

v.

F. David MATHEWS, Secretary of Health, Education and Welfare.

Civ. A. No. 72–2522.

United States District Court, E. D. Pennsylvania.

March 7, 1977.

Alan Linder, Central Pa. Legal Services, Lancaster, Pa., for plaintiff.

David W. Marston, U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION AND ORDER

### HISTORY AND CONTENTIONS

TROUTMAN, District Judge.

This action, as *originally* filed in this Court, challenged the procedure utilized by the Secretary of Health, Education and Welfare [the Secretary] pursuant to Section 204 of the Social Security Act [the Act], to adjust or reduce social security benefits in order to recoup an alleged overpayment. Specifically, plaintiff, on behalf of herself and others similarly situated, sought injunctive and declaratory relief, requiring the Secretary to conduct an evidentiary hearing prior to adjusting or reducing social security benefits to which plaintiff is entitled under Title II of the Act. 42 U.S.C. § 401 *et seq.* Plaintiff challenged the failure to provide an oral hearing prior to the recoupment of an alleged overpayment on the grounds that it is contrary to the purpose of the Act and violative of the Fourteenth Amendment to the Constitution. Before the Court *were* (1) defendant's motion to dismiss the complaint for lack of jurisdiction, (2) plaintiff's motion for a class action determination, (3) plaintiff's motion to convene a three-judge court, and (4) cross-motions for summary judgment.

This Court, in its opinion filed April 30, 1974, held that the Secretary of Health, Education and Welfare was constitutionally required to provide notice and opportunity for an oral evidentiary hearing, prior to the suspension of social security benefits to recover an overpayment. *Mattern v. Weinberger,* 377 F.Supp. 906 (E.D.Pa.1974). The Third Circuit Court of Appeals essentially affirmed this holding, subject to certain exceptions.[1] *Mattern v. Weinberger,* 519 F.2d 150 (3rd Cir. 1975). The Secretary filed a petition for a writ of certiorari with the Supreme Court (U.S. S.Ct., No. 75–649), which petition was acted upon on May 24, 1976. 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812 (1976). The Supreme Court vacated the appellate decision and remanded for reconsideration in light of the decision in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Third Circuit Court of Appeals, by order of July 23, 1976, remanded the action to this Court for reconsideration in accordance with the Supreme Court's directive.

It is defendant's contention that the *Eldridge* decision is dispositive of the procedural due process issues in this litigation and requires reversal of this Court's prior opinion. Defendant further contends that *Eldridge,* in conjunction with the opinion in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), "impacts" on the jurisdiction of this Court.

The plaintiff contends otherwise. Preliminarily, plaintiff concedes that this Court has no federal question jurisdiction under

---

1. The Court of Appeals held that due process did not mandate opportunity for a prior hearing where the issues were subject to resolution by documentary proof. 519 F.2d at 165. The Court of Appeals vacated the judgment of this Court and remanded for entry of an appropriate order. *Id.* at 169.

28 U.S.C. § 1331. She properly interprets *Salfi* as holding (prior to *Eldridge*) that the only avenue open for judicial review is under 42 U.S.C. § 405(g).[2] The defendant has contended throughout that our jurisdiction is so limited. Plaintiff further contends, however, that in *Eldridge* the Court modified the jurisdictional holding of *Salfi*. We quote as follows from plaintiff's brief:

"The Court stated that the exhaustion requirement contained two elements, one which could be 'waived' by the Secretary and one which could not be waived. 96 S.Ct. 899. The non-waivable, 'jurisdictional' element was the requirement that a claim be 'presented' to the Secretary for purposes of a final decision to enable federal court review. The waivable element was the requirement of 'exhaustion' of the Secretary's administrative remedies. 96 S.Ct. 899. These elements are satisfied in the case at bar.

"In *Eldridge*, the Court held that the plaintiff's claim had been presented to the Secretary through the filing of an application for benefits, and by present-ing claims to the district office and Regional offices of the Social Security Administration. Furthermore, Mr. Eldridge had answered a state agency questionnaire regarding his continuing disability and he had written and sent a letter in response to the Secretary's tentative determination that his disability had ceased, contesting the Secretary's action, which claim the Secretary had denied. 96 S.Ct. 900. Similarly, Mrs. Mattern has presented her benefit claim to the Secretary to satisfy the jurisdictional requirements of *Eldridge*.

"As the record herein shows (Appendix, 54a) and as noted by this Court, Mrs. Mattern opposed the Secretary's proposed action to terminate her benefits. 377 F.Supp. at 909. She answered the Secretary's 'without fault' questionnaire and submitted a waiver of overpayment request. Appendix, 54a–57a. She also filed a request for a reconsideration determination (Appendix, 63a) which was denied, although the amount of her proposed monthly repayments was thereaft-

---

**2.** Section 205(g) of the Act provides:

"(g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, be-cause of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court shall, on motion of the Secretary made before he files his answer, remand the case to the Secretary for further action by the Secretary, and may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office."

er reduced. Appendix, 67a; 519 F.2d at 155.

"While Mrs. Mattern may or may not have 'presented' her constitutional claim to the Secretary, such is not required under *Eldridge*. The Court stated in *Eldridge* that while the Secretary may have the authority to determine the timing and content of the challenged procedures, the Secretary would not be required 'even to consider such a challenge since it is 'unrealistic' to expect the Secretary to consider 'substantial changes' in the current administrative review system 'at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context'. 96 S.Ct. at 900.

"The Court held that the waivable element of obtaining a final decision of the Secretary by Exhaustion of remedies was also satisfied in *Eldridge*. The Court noted that the Secretary has the discretion to waive exhaustion requirements either because the 'internal needs of the agency are fulfilled' or because the relief sought is 'beyond his power to confer'. 96 S.Ct. at 900. However, the Court also noted that in certain circumstances the failure or refusal of the Secretary to waive the exhaustion requirements is not entitled to deference by the courts if 'a claimant's interest in having a particular matter resolved promptly is so great that deference to the agency's judgment is inappropriate'. *Id.* The Court in *Eldridge* held that such a case had been presented where the claimant's 'constitutional challenge was entirely collateral' to the substantive claim of entitlement, and where 'full relief cannot be obtained at a post deprivation hearing'. 96 S.Ct. at 901. The Court then found that Mr. Eldridge has raised at least a 'colorable claim' that an erroneous termination would not be subsequently recompensable. *Id.*

"Similarly, in the instant case Mrs. Mattern has not fully exhausted administrative remedies, but has presented a claim which would be futile to pursue through final agency procedures. Certainly, her interest in the prompt resolution of the matter should outweigh deference to agency exhaustion requirements in that her benefits were to be terminated without a hearing. Unquestionably, her constitutional claim is entirely collateral to her claim for benefits, as the purpose of her suit is to obtain procedural due process for all claimants similarly situated. In this regard, the Court noted the 'core principle that statutorily created finality requirements, should if possible, be construed so as not to cause crucial collateral claims to be lost and potential irreparable injuries to be suffered. 96 S.Ct. at 901, fn. 11.

"It is submitted that Mrs. Mattern has also satisfied the exhaustion requirements of *Salfi*, in that the Secretary appears to have waived the exhaustion requirement herein by not having raised a sufficient 'challenge' to the allegations of exhaustion in paragraph # 24 of the Complaint herein. Appendix 11a. See *Salfi, supra,* 95 S.Ct. at 2468. In addition, further exhaustion of administrative remedies herein would be futile and a waste of agency resources. As noted by Justice Rehnquist in *Salfi* :

" 'Plainly these [exhaustion] purposes have been served once the Secretary satisfies himself that the only issue is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine, and that the claim is neither otherwise invalid nor cognizable under a different section of the Act. Once a benefit applicant has presented his or her claim at a sufficiently high level of review to satisfy the Secretary's administrative needs, further exhaustion would not merely be futile for the applicant, but would also be a commitment of administrative resources unsupported by any administrative or judicial interest'. *Weinberger v. Salfi,* 95 S.Ct. at 2467.

"In light of the above, it is clear that Mrs. Mattern has presented her claim to the Secretary and has sufficiently exhausted her administrative remedies for purposes of obtaining a final decision for federal court consideration. Therefore although

42 U.S.C. § 405 was not claimed as a basis of jurisdiction in the Amended Complaint, clearly such basis of jurisdiction exists in this case, and this Court may proceed to decide the merits of this matter."

Thus, plaintiff contends that this Court should now assume jurisdiction under § 405(g), continue jurisdiction under 28 U.S.C. § 1361 and by either avenue afford the plaintiff the relief previously afforded which she continues to seek.

## OUR PRIOR DECISION

In our prior decision (377 F.Supp. 906) we denied jurisdiction under 28 U.S.C. § 1331, § 1343(4) and § 1346. We assumed jurisdiction under 28 U.S.C. § 1361. The defendant vigorously argued, at that time, that our jurisdiction was limited to 42 U.S.C. § 405(g) and that the specific language of § 405(h) barred our affording, in *this* action, the relief sought, for failure by plaintiff to exhaust her administrative remedies under § 405(g). Pointing out that plaintiff's action was bottomed on constitutional claims and that the merits of plaintiff's case were not before us, we concluded that jurisdiction rested upon 28 U.S.C. § 1361.[3] It provides:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

We reviewed the prior law as follows: "The legislative history of the mandamus statute reveals that the statute's construction turns upon traditional mandamus law, and the Court of Appeals in *Richardson v. United States*, 465 F.2d 844 (3d Cir. 1972), *cert. granted* 410 U.S. 953, 93 S.Ct. 1420, 35 L.Ed.2d 686 (1973), summarized the prior law:

" 'In order for mandamus to issue, a plaintiff must allege that an officer of the Government owes him a legal duty

which is a specific, plain ministerial act "devoid of the exercise of judgment or discretion". [citations omitted] An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt.' 465 F.2d at 849."

And then we stated:

"Applying these standards to the facts of the instant case, neither the provision of the Act in question nor the regulations promulgated thereunder compel the Secretary to conduct a hearing prior to the recoupment of an overpayment. While the statute and regulations are silent on this issue, they must be read in *conjunction with the requirements imposed upon governmental bodies by the due process clause of the Fifth Amendment,* and our examination of these provisions must be conducted in *conjunction with the decisions of the Supreme Court* construing the due process clause. The Mandamus Act does not distinguish between a statutory duty owed to the plaintiff by the Secretary and a constitutional duty owed by the Secretary. Whether the Secretary owes plaintiff a duty under the Fifth Amendment of the Constitution can be determined only after an analysis of the requirements of the due process clause and their application to the statutory and regulatory provisions at issue. In the instant case, plaintiff relies upon *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), to establish the existence of the constitutional right to a prior hearing in administrative recoupment cases. She argues that *Goldberg* imposes the constitutional duty upon the Secretary to conduct a hearing prior to the adjustment or reduction of her benefits in order to recoup an over-payment and that this duty is ministerial and devoid of discretion in that it is compelled by the Constitution. The denial of the opportunity for such a prior hearing, according to plaintiff, gives rise to jurisdic-

---

**3.** We shall not further discuss our reasoning, there expressed, as to the jurisdictional reach of § 1311, § 1343(4) and § 1346.

tion under the Mandamus Act. *We agree with the Court in Elliott v. Weinberger, 371 F.Supp. 960 (D.Hawaii 1974), that the applicability of Goldberg and its progeny is sufficiently apparent to establish jurisdiction under Section 1361. See also Martinez v. Richardson, 472 F.2d 1121 (10th Cir. 1973)."* [Emphasis added]

Not surprisingly, it is thus apparent from language therein used that our prior opinion and conclusions were based upon our understanding of the then existing law as pronounced in *Goldberg* and construed by other courts. In discussing "due process", we stated:

> "The basic principles of due process are well established: Parties whose rights are affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner'. *Fuentes v. Shevin, supra,* at 80; *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). In the instant case, the regulations permit the adjustment of benefits following the summary reconsideration decision on the question of waiver, and they permit the implementation of the adjustment prior to an evidentiary hearing before an administrative law judge. To the extent that the regulations fail to provide an opportunity for evidentiary hearing before an administrative law judge prior to the reduction of benefits, we conclude that the procedure utilized to recoup over-payments is constitutionally deficient in that it fails to provide an evidentiary hearing 'at a meaningful time'. Plaintiff's benefits are a matter of statutory entitlement and may not be terminated, reduced or otherwise adjusted absent an opportunity for a prior hearing. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)."

We rejected the defendant's contention that *Goldberg* was inapplicable because if was based upon need and in so doing relied upon *Fuentes* and after quoting therefrom said as follows:

> "It is, therefore, apparent that under the present law need or necessity do not constitute the *sine qua non* upon which the right to procedural due process is founded."

followed by a footnote:

> "12. In his argument, the Secretary relied heavily on *Torres v. New York State Dept. of Labor,* 321 F.Supp. 432 (S.D.N.Y. 1971), *vacated and remanded,* 402 U.S. 968, 91 S.Ct. 1685, 29 L.Ed.2d 133 (1971), *adhered to* 333 F.Supp. 341 (S.D.N.Y. 1971), *aff'd* 405 U.S. 949, 92 S.Ct. 1185, 31 L.Ed.2d 228 (1972). In *Torres,* the lower court upheld the constitutionality of the New York State Unemployment Compensation statutes. The Court held that *Goldberg* did not apply to unemployment compensation because the need was not a factor in that program.
>
> *Torres* was decided prior to *Fuentes,* and since *Fuentes,* three-judge courts in *Pregent v. New Hampshire Department of Employment,* 361 F.Supp. 782 (D.N.H. 1973) and in *Steinberg v. Fusari,* 364 F.Supp. 922 (D.Conn.1973), rejected the *Torres* rationale in the light of *Fuentes* and held that an evidentiary hearing is required prior to the termination of unemployment benefits. *See also Wheeler v. Vermont,* 335 F.Supp. 856 (D.Vt.1971). The *Steinberg* case came out of the same circuit as did *Torres* and was apparently overlooked by the Secretary."

Had the Supreme Court found the opportunity to express itself in *Wright* we would not have misread its intentions as to the limits of the *Goldberg* decision. In our prior opinion, we stated:

> "Secondly, the Secretary argues that the weight of judicial authority supports his position that *Goldberg* is inapplicable to cases arising under Title II. In *Richardson v. Wright,* 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151, *rehearing denied,* 405 U.S. 1033, 92 S.Ct. 1274, 1296, 31 L.Ed.2d 490 (1972), the Supreme Court was faced squarely with the question whether *Gold-*

*berg* applied to cases arising under the Act. In the light of new regulations adopted by the Secretary, the Court remanded the case for reconsideration under the new regulations. The Secretary relies on *Wright* for the proposition that an evidentiary hearing is not a *per se* requirement prior to the adjustment of social security benefits in order to recoup an over-payment. We believe that the Secretary is reading too much into that decision, but it is significant in that all cases decided subsequent thereto were based on the new regulations adopted by the Secretary. The Secretary also relies on *Anderson v. Finch*, 322 F.Supp. 195 (N.D.Ohio 1971), *remanded* 454 F.2d 596 (6th Cir. 1972) and *Messer v. Finch*, 314 F.Supp. 511 (E.D.Ky.1970), *judgment vacated for mootness*, 400 U.S. 987, 91 S.Ct. 455, 27 L.Ed.2d 435 (1971), in support of his argument. These cases, however, were decided prior to *Fuentes*, and since *Fuentes*, the weight of judicial authority establishes that procedural due process requires an evidentiary hearing prior to termination or adjustment of social security benefits. *Elliott v. Weinberger*, 371 F.Supp. 960 (D.Hawaii 1974), (hearing required prior to adjustment of social security benefits in order to recoup an over-payment); *Eldridge v. Weinberger*, 361 F.Supp. 520 (W.D.Va.1973) (hearing required prior to termination of social security benefits); *Williams v. Weinberger*, 360 F.Supp. 1349 (N.D.Ga.1973) (hearing required prior to termination of social security benefits). * * * "

Thus, our prior disposition of this case was based primarily upon *Goldberg* as we construed it in the light of other cases such as *Sniadach* [*Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349], *Fuentes*, etc. Note our reliance upon *Eldridge* at the District level. Perhaps redundantly, we have quoted from our prior opinion so that the reader may appreciate the extent to which we relied upon *Goldberg* and its progeny.

It is now our duty to "reconsider", in the light of *Eldridge*, what we previously did.

## JURISDICTION

■ The views of the District Court in *Eldridge* were described as follows (424 U.S. pp. 325, 326, 96 S.Ct. p. 898):

"The District Court concluded that the administrative procedures pursuant to which the Secretary had terminated Eldridge's benefits abridged his right to procedural due process. The court viewed the interest of the disability recipient in uninterrupted benefits as indistinguishable from that of the welfare recipient in *Goldberg*. *It further noted that decisions subsequent to Goldberg demonstrated that the due process requirement of pretermination hearings is not limited to situations involving the deprivation of vital necessities.* See *Fuentes v. Shevin*, 407 U.S. 67, 88–89, 92 S.Ct. 1983, 1998–1999, 32 L.Ed.2d 556 (1972); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Reasoning that disability determinations may involve subjective judgments based on conflicting medical and nonmedical evidence, the District Court held that prior to termination of benefits Eldridge must be afforded an evidentiary hearing of the type required for welfare beneficiaries under Title IV of the Social Security Act. Id., at 528, 91 S.Ct. 1586, 29 L.Ed.2d 90 * * *" (Emphasis added)

Our views were substantially the same in reaching our original decision. However, we based jurisdiction upon § 1361. The Supreme Court does not preclude § 1361 as a basis for jurisdiction given such compelling circumstances as would warrant jurisdiction under the Mandamus statute (see footnote 12, p. 332). However, it is not easy to visualize those circumstances under which § 1361 jurisdiction would properly attach. Under *Eldridge* the jurisdictional requirements of § 405(g) are lessened. Exhaustion of remedies, as we knew it and construed it, is lessened so that, under *Salfi*, as construed in *Eldridge*, the claimant need not pursue each and every step prescribed by statute and regulations *before* appealing to court. Rather, he may reach the court at

a much earlier stage. His claim must have been "presented" to the Secretary but his remedies need not have been "exhausted" in the complete and historical sense as heretofore contemplated by this and other courts. As the Supreme Court stated:

> "But cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate. This is such a case." (p. 330, 96 S.Ct. p. 900)

It is doubtful, under *Eldridge* and under the facts here involved that we have § 1361 jurisdiction, an issue which need not be met assuming jurisdiction under § 405(g). Other cases within this Circuit have concluded that jurisdiction does not exist under § 1361. *Jamieson v. Weinberger,* 379 F.Supp. 28 (E.D.Pa.1974); *McDonald et al. v. Weinberger et al.,* (Civil No. 74–1219) (M.D.Pa.1976). Assuming jurisdiction on either basis or both, we thus reach the question whether the Secretary's procedures comport with due process or whether plaintiff is entitled to the extraordinary relief sought beyond the relief afforded by the Secretary.

## ADMINISTRATIVE PROCEDURES

Section 204 of the Act, 42 U.S.C. § 404, authorizes the Secretary, under regulations prescribed by him, to recover incorrect overpayments or to adjust benefits to provide for such recovery. Section 204 provides in pertinent part:

"(a) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this sub-chapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:

"(1). With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall apply any combination of the foregoing. . . .

"(b) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience."

Under subsection (b) of Section 204, no adjustment or recovery shall be made where such person is without fault[4] and such adjustment or recovery would defeat the pur-

---

4. "Fault" is defined in 20 CFR § 404.507 which provides:

> "'Fault' as used in 'without fault' (see §§ 404.506 and 405.355) applies only to the individual. Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault. In determining whether an individual is at fault, the Administration will consider all pertinent circumstances, including his age, intelligence, education, and physical and mental condition. What constitutes fault (except for 'deduction overpayments'—see § 404.510) on the part of the overpaid individual or on the part of any other individual from whom the Administration seeks to recover the overpayment depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act [42 U.S.C.A. § 1395f(e)], resulted from:

> "(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

> "(b) Failure to furnish information which he knew or should have known to be material; or

> "(c) With respect to the overpaid individual only, acceptance of a payment which he

**1326**

pose of Title II of the Act[5] or would be against equity and good conscience.[6] See also 20 CFR § 404.506. 20 CFR § 404.901 et seq. of the Social Security Administration regulation sets forth a four-step administrative process by which a claimant may obtain review of a decision to adjust benefits in order to recoup an overpayment. Following an initial determination that an overpayment has been made and that there is no basis for waiver of recovery, the claimant may obtain reconsideration pursuant to 20 CFR 404.914. Subsequent to a reconsidered determination, an individual may request a hearing *de novo* before an administrative law judge, 20 CFR 404.917, and review by the Appeals Council of the Social Security Administration. 20 CFR 404.945. Thereafter, a claimant may seek judicial review in the district courts pursuant to § 205(g) of the Act. 42 U.S.C. § 405(g). During the period that a claimant is pursuing his administrative remedies, there is no provision in the Act or in the regulations, requiring that a hearing must be conducted prior to implementation of any adjustment or recovery. Section 5503.5 of the Claims Manual provides that where reconsideration of an initial determination is requested, "withholding to recoup the overpayment will be further deferred and payment will be continued" until a decision upon reconsideration is made. Thus, under the regulations and provisions of the Claims Manual, adjustment of benefits in order to recoup an overpayment may be implemented following a decision upon reconsideration and there is no provision for a hearing *de novo* before an administrative law judge prior to the implementation of the adjustment.

## PROCEDURAL DUE PROCESS

■ The procedures described are not unlike those considered in *Eldridge*. They ultimately reach the same result as *Eldridge*. Should it be determined that the claimant is entitled to those payments of which she has been deprived, she is reimbursed retroactively. Our previous conclusions were based upon a recognition of the intervening needs of the claimant, equating same with the needs of a welfare recipient in the light of the purposes of the Act. Our views as reflected in the language of our prior opinion are apparent. Now, *Eldridge* tells us that in the light of the elaborate character of the administrative procedures

either knew or could have been expected to know was incorrect."

5. The phrase "defeat the purpose" of Title II is defined in 20 CFR § 404.508, which provides:

"(a) General. 'Defeat the purpose of title II [42 U.S.C.A. § 401 et seq.],' for purposes of this subpart, means defeat the purpose of benefits under this title, i. e., to deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs. An individual's ordinary and necessary expenses include:

"(1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e. g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII [42 U.S.C.A. § 1395 et seq.]), taxes, installment payments, etc.;

"(2) Medical, hospitalization, and other similar expenses;

"(3) Expenses for the support of others for whom the individual is legally responsible; and

"(4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

"(b) When adjustment or recovery will defeat the purpose of title II [42 U.S.C.A. § 401 et seq.]. Adjustment or recovery will defeat the purposes of title II [42 U.S.C.A. § 401 et seq.] in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses."

6. "Against equity and good conscience" is defined in 20 CFR § 404.509, which provides:

"'Against equity and good conscience' means that adjustment or recovery of an incorrect payment (under title II or title XVIII [42 U.S.C.A. § 401 et seq. or § 1395 et seq.]) will be considered inequitable if an individual, because of a notice that such payment would be made or by reason of the incorrect payment, relinquished a valuable right (examples (1), (2) and (5)) or changed his position for the worse (examples (3) and (4)). In reaching such a determination, the individual's financial circumstances are irrelevant."

provided by the Secretary, due process does not require an evidentiary hearing "prior to temporary deprivation" of benefits in the case of disability recipients (424 U.S. p. 340, 96 S.Ct. 893). Contrasting the financial needs of a welfare recipient "on the very margin of subsistence" with that of a disability claimant, and considering "[other] potential sources of temporary income" available to the latter, the Court has concluded that "something less than an evidentiary hearing is sufficient prior to adverse administrative action" (p. 343, 96 S.Ct. p. 907).

Mr. Eldridge was a Social Security claimant. Mrs. Mattern is a Social Security claimant. Mrs. Mattern's benefits are reduced because of an "overpayment" allegedly received. Certainly the right of a claimant who has been overpaid can rise no higher than one who has received no such overpayment. To give back that which one has erroneously received and to which there was never any entitlement appears to be far less burdensome than the loss of that to which one may or may not ultimately be entitled. The potential deprivation here appears to be less than in *Eldridge* "although the degree of difference can be overstated" (p. 341, 96 S.Ct. p. 906).

Neither are we convinced that the "without fault" provisions of the Act and the resulting issues to be decided differentiate this case from *Eldridge*. These issues and the determination thereof are not unlike the "subjective judgments based on conflicting medical and nonmedical evidence" (p. 326, 96 S.Ct. p. 898) involved in *Eldridge*. In fact, the determinations here may be far less subjective, less complicated and less involved than those involved in *Eldridge*. It appears to be a "more sharply focused and easily documented decision" (p. 343, 96 S.Ct. p. 907) than that involved in *Eldridge*.

In *Jamieson v. Weinberger*, 379 F.Supp. 28 (E.D.Pa.1974) our colleague, Judge Bechtle, wisely stated (p. 36) "Here the determination whether or not an individual is at fault under § 204(a)(1) of the Act requires the exercise of judgment by the agency * * *".

In considering other issues and tests discussed at length in *Eldridge* such as pretermination procedures, the reversal rate, the private interest, the public interest, etc., the instant case is not materially unlike the *Eldridge* case in each instance. We understand and we respect the plaintiff's contentions. We are not unsympathetic to her arguments and her urgings. However, we are unconvinced that plaintiff's position is sufficiently unlike *Eldridge* to justify the distinctions sought by plaintiff.

## REFLECTIONS

In reaching our conclusion we seem to have traveled down a not unfamiliar trail winding through the forest of procedural due process. Among the somewhat familiar landmarks which we passed was the opinion of this writer in the three-judge court decision in *Epps et al. v. Cortese et al.*, 326 F.Supp. 127 (E.D.Pa.1971). There, in concluding that the procedures under the Pennsylvania Replevin Act comported with procedural due process, we sought to distinguish *Goldberg*. We said:

> " * * * The prehearing termination of welfare benefits deprived ostensibly eligible recipients of the very means by which to live for an indeterminate period of time. The governmental interest in preserving the uninterrupted receipt of welfare, considering the 'brutal need' and destitute circumstances of the ostensibly eligible welfare recipients clearly outweighed countervailing fiscal and administrative considerations. * * *

> "In the instant case, based upon the facts as stipulated, we find no irreparable harm or unconscionable hardships akin to those suffered in *Sniadach, Goldberg* and the cases cited by plaintiffs. * * * The plaintiffs have not shown that they suffered 'grievous loss' of any kind by reason of the temporary dispossession suffered here. * * *" Id. 134.

In reversing that decision, the Supreme Court pointed out that the court below had misread both *Goldberg* and *Sniadach*, stating:

"This reading of *Sniadach* and *Goldberg* reflects the premise that those cases marked a radical departure from established principles of procedural due process. They did not. Both decisions were in the mainstream of past cases, having little or nothing to do with the *absolute 'necessities'* of life * * *. While *Sniadach* and *Goldberg* emphasized the special importance of wages and welfare benefits, they did not convert that emphasis into a new and more limited constitutional doctrine.

"Nor did they carve out a rule of '*necessity*' for the sort of nonfinal deprivations of property that they involved. * * *" (Emphasis added)

407 U.S. 88, 89, 92 S.Ct. 1998, 32 L.Ed.2d 574, 575 (1971).

Now *Eldridge* holds that *Goldberg* is limited to welfare assistance given to persons on the "very margin of subsistence", involving the "very means by which to live" and draws an even finer line of distinction between the needs of a Social Security recipient and a Welfare recipient. The so-called "brutal need" involved in *Goldberg,* now recognized in *Eldridge,* was the precise point emphasized by the three-judge court in *Epps.*

Therefore, at the end of this long trail, we find ourselves substantially where we started six years ago.

### CONCLUSION

Thus, we are compelled to reverse our prior decision. Doubting that we have jurisdiction under § 1361, but assuming that we have jurisdiction under § 405(g), we shall deny the defendant's motion to dismiss, deny plaintiff's motion for a class action, *Weinberger v. Salf.,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), and grant defendant's motion for summary judgment.