STATE OF MAINE                                    SUPERIOR COURT
                                                   CIVIL ACTION
YORK, ss.                                    DOCKET NO. CV-08-290

GAIL P. QUINNEY,

            Plaintiff

      v.                                            ORDER

THE BOARD OF TRUSTEES,
MAINE PUBLIC EMPLOYEES
RETIREMENT SYSTEM,

and

GAIL DRAKE WRIGHT,

            Defendants

      This case comes before the Court on Plaintiff's Motion for Preliminary Injunction.

Following hearing, the Motion will be Denied.

BACKGROUND

      In or around April 2006, Plaintiff Gail Quinney, was approached by the

superintendent of her school system to discuss the possibility of her continuing to work

for the school district as an educational tester after her full-time retirement. Complaint

¶10, Quinney Affidavit ¶2. As she was planning on retiring at the end of that school

year, the superintendent informed her that such an arrangement would not affect her

ability to receive retirement benefits from the Maine State Employees Retirement

System (the "System"). Quinney Affidavit ¶3.

      On May 15, 2006, in an effort to further ensure that such an arrangement would

not interfere with her ability to receive retirement benefits, Ms. Quinney met with

Judith Ronco, an employee of the System. Quinney Affidavit ¶ 4. Ms. Ronco informed Ms. Quinney that such an arrangement would not interfere with her ability to receive retirement benefits from the System as long as she did not work more than 60 days per year. Quinney Affidavit ¶ 4. On May 15, 2006, Ms. Quinney signed a Certification of Bona Fide Termination, certifying that "prior to the date of my termination from employment, I did not discuss or agree in any way to future employment with my employer." Exhibit B, Defendants' Opposition to Preliminary Injunction. The following day, May 16, 2006, Ms. Quinney signed a Letter of Agreement, stating that she would be working for the school district during the 2006-2007 school year.

At the end of the 2006 school year, Ms. Quinney retired, and beginning on July 1, 2006, she began receiving retirement benefit payments from the System. Complaint, ¶6. However, on or about June 20, 2008, Lynn White, a Retirement Services Supervisor at the System, informed Ms. Quinney that because she engaged in discussions with the school district concerning continued employment prior to her retirement, that her retirement was not bona fide, and therefore, she was not eligible to receive the $62,365.67 that came to her in the form of monthly benefit payments. Complaint ¶10, Exhibit F, Defendants' Opposition to Preliminary Injunctions. Ms. Quinney was informed that when her retirement was, in fact, bona fide (i.e. did not discuss continued employment prior to date of retirement), that she would be able to receive her retirement benefits. Exhibit F, Defendants' Opposition to Preliminary Injunctions. The System informed Ms. Quinney that if she did not pay the amount allegedly owed to it prior to her bona fide retirement, "the System will deduct any balance, including interest, from your initial benefit payments until the balance [owed] is paid in full." Complaint ¶8, Exhibit F, Defendants' Opposition to Preliminary Injunctions. Since July

2

1, 2008, the System has not provided Ms. Quinney with retirement benefits in an effort to recoup the amount allegedly owed to it. Complaint ¶11.

As a result of not receiving her payments, Ms. Quinney has brought this present action. In her verified complaint, she alleges that the Defendants' actions leading up to the suspension of her retirement benefits violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution because she was not provided with an adequate and fair opportunity to respond to the allegations *before* she was deprived of her benefits. She asks this Court for preliminary injunctive relief and to issue a declaratory judgment declaring that the Defendants' actions violated Due Process. While originally, Ms. Quinney also alleged a violation of the Maine Tort Claims Act, this count was voluntarily dismissed on November 10, 2008.

## STANDARD OF REVIEW

"The writ of injunction is declared to be an extraordinary remedy only to be granted with utmost caution when justice urgently demands it and the remedies at law fail to meet the requirements of the case." *Bar Harbor Banking & Trust v. Alexander*, 411 A.2d 74, 79 (Me. 1980)(*quoting* R. Whitehouse, Equity Jurisdiction § 563 (1900)). Before granting a preliminary or permanent injunction, a court must find that four criteria are met:

(1) That plaintiff will suffer irreparable injury if the injunction is not granted,

(2) That such injury outweighs any harm which granting the injunctive relief would inflict on the defendant,

(3) That plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility),

(4) That the public interest will not be adversely affected by granting the injunction.

3

*Ingraham v. University of Maine*, 441 A.2d 691, 693 (Me. 1982). Failure to demonstrate that any one of these criteria are met, requires that injunctive relief be denied. *Bangor Hitoric Track, Inc. v. Dep't of Agric.*, 2003 ME 140, ¶10, 837, A.2d 129, 132. As a general matter, it is agreed that the purpose of a preliminary injunction is to preserve the status quo pending final judgment, and that courts do not readily enter mandatory injunctions that grant part of the requested permanent relief. *Dept. Of Env. Protection v. Emerson*, 563 A.2d 762, 771 (Me. 1989).

While the Defendants generally acknowledge that three of the *Ingraham* criteria tilt in favor of Ms. Quinney's request for preliminary injunctive relief,[1] they dispute that she has established a likelihood of success on the merits of her Due Process claim.

DISCUSSION

Nothing in the statute governing the process by which the System recoups wrongful payments, 5 M.R.S.A.A. § 17451, requires the Board to provide a pre-interruption hearing. Ms. Quinney alleges that, because there is no pre-interruption hearing, she is not allowed to make a waiver argument before the Board to stop what she alleges is a wrongful interruption. Therefore, she argues that such a process makes the possibility of erroneous seizures more likely, and thus, Due Process is violated.

"The essentials of procedural due process comprise notice of the charges and a reasonable chance to meet them." *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990). *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). The basic constitutional requirement is that, before the state can significantly deprive an individual of liberty or property, that individual must be forewarned and afforded an opportunity to be heard "at a meaningful time and in a meaningful manner." *Amsden*, 904 F.2d at 753 (*quoting*

---

[1] The Defendants' written submission challenges Ms. Quinney on each of the *Ingraham* criteria, but at oral argument they acknowledged that, except with respect to the merits, the equities favored Ms. Quinney.

4

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Procedural due process is simply "a guarantee of fair procedure." *Zinermon v. Burch*, 494 U.S. 113, 114 (1990).

There is no mechanical formula by which the adequacy of state procedures can be determined. *Amsden*, 904 F.2d at 753. Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (*quoting Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Thus, in determining what process is due, courts balance a number of factors, including (1) the nature of the private and public interests involved, (2) the risk of erroneous deprivation being inflicted under the procedures employed by the state, and (3) the probable benefit of demanding additional procedural safeguards. *Id.; See Mathews*, 424 U.S. at 335; *Morrissey*, 408 U.S. at 481.

The Defendants argue that the current statutory scheme that governs the way in which the System recoups wrongful payments meets the requirements of due process. They point to the fact that Ms. Quinney was given notice that her retirement benefits were going to be interrupted, and further was informed of the initial process by which she could appeal the System's decision to interrupt her benefit payment.[2] Defendants further argue that the absence of a pre-interruption hearing does not violate the requirements of due process, as the U.S. Supreme Court has held that, so long as the remedial scheme is "clear and certain," due process allows the "flexibility to maintain an exclusively predeprivation remedial scheme. . . [or] an exclusively postdeprivation

---

[2] In the original notice of interruption, Ms. Quinney was informed that if she disagreed with the decision to interrupt her benefits, she had the right to request a review of the decision to interrupt by a Deputy Executive Director of the System. Ms. Quinney subsequently received the decision of John Milazzo, Chief Deputy Executive Director and General Counsel of the System, which served as the initial decision of the Executive Director. If Ms. Quinney disagreed with that decision, she was informed of the next step in the appeal process. After that, the statutory scheme is outlined by 5-M.R.S.A.A. §17054(3) (Recovery of overpayments by the retirement system), 5 M.R.S.A.A. §17451 (Appeals), and 5 M.R.S.A.A. §11001-11008 (Maine Administrative Procedure Act, Judicial Review – Final Agency Action).

regime, see, e. g., *Bob Jones Univ. v. Simon*, 416 U.S. 725, 746-748, (1974), or a hybrid regime. *Reiche v. Collins*, 513 U.S. 106, 110-111 (1994).

Ms. Quinney, on the other hand, argues that the current remedial scheme does not meet the requirements of due process. She cites to *Shannon v. United States Civil Service Commission*, 444 F. Supp 354 (N.D. Calif. 1977), as outlining a persuasive analysis of why due process requires pre-interruption hearings on the issue of waiver.[3]

Ms. Quinney argues that the private interest at stake is the ability of a retiree, a person who is living on a fixed income, to receive monthly benefit payments without wrongful interruption. Further, she argues that, without a pre-interruption hearing on the issue of waiver, the possibility of erroneous deprivation of funds is greater, as the Board is unable to weigh a number of possible factors that may mitigate the need for interruption in the first place. Moreover, she points out that merely delaying the interruption until after the hearing will have a minimal impact on the public interest because, if it is found that the interruption was valid, the System will have no difficulty recovering the alleged overpayment from Ms. Quinney's contributions, over which they have control.

Here, Ms. Quinney argues that, after weighing the private interest, the possibility of erroneous deprivation, and probable benefit to public interest, that one must come to the conclusion that a pre-interruption hearing is the process that is due to her.

However, Ms. Quinney was provided notice of interruption and opportunity for review by the Deputy Executive Director and was provided with information concerning initiating an appeal of that interruption. The fact that there was no pre-interruption hearing does not clearly violate due process.

---

[3] However, please note that when *Shannon* was appealed, the Ninth Circuit based its "holding squarely on the statute itself" and did not consider whether the Constitution requires such [pre-interruption] hearings." *Shannon v. United States Civil Service Com.*, 621 F.2d 1030, 1032 (1980).

6

While some months will likely pass between the time her benefits were interrupted and the time the Board decides the case, it cannot be said that Ms. Quinney was unable to respond at a meaningful time. She has been and will be able to continually submit information and arguments to the System on the merits of her case as the administrative hearing process unfolds. While the final decision may be delayed, the fact that Ms. Quinney was able to submit information that was considered by the System prior to the issuance of the Executive Director's initial decision supports a finding that she was given the opportunity to be "heard" within a meaningful manner.

## CONCLUSION

Because Ms. Quinney failed to show a clear likelihood that she will succeed on the merits, her motion for preliminary injunction is DENIED.


Dated:        December 30, 2008

G. Arthur Brennan
Justice, Superior Court


PLAINTIFF ATTORNEY:  DONALD FONTAINE, ESQ
DEFENDANT'S ATTORNEY:  CHRISTOPHER MANN, AAG