Katherine BOUCHARD, et al.,
Plaintiffs,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

Lillian PINNEX, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

Civ. A. Nos. 78–0632–F, 80–0319–F.

United States District Court,
D. Massachusetts.

Sept. 19, 1984.

Mary Ellen McCarthy, Western Mass Legal Services Inc., Holyoke, Mass., for plaintiffs.

Joseph J. McGovern, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM

FREEDMAN, District Judge.

On April 2, 1984, the Court issued a Memorandum and Order in two consolidated cases in which it held the Secretary of Health and Human Services ("Secretary") incorrectly computed the optional state supplementary payment distributed under the Supplemental Security Income ("SSI") Program, Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, when income is "deemed" from an ineligible spouse to a categorically eligible individual. *Bouchard v. Secretary of Health & Human Services*, 583 F.Supp. 944 (D.Mass.1984). The plaintiffs sought an order reversing the final decision in each of their individual claims, as well as a similar order running to the entire class, and declaratory and injunctive relief. The Court declared the Secretary's method of calculation erroneous at law, and declaratory and injunctive relief issued as to future benefits. The claims of two named plaintiffs, whom the Court assumed were still receiving benefits as members of a "mixed" couple, were reversed and remanded to the Secretary for recalculation of future state supplementary payments due them. However, the claims of the remaining named plaintiffs who were no longer receiving benefits as members of "mixed" couples under the program were not remanded, and retroactive class relief was denied, in accordance with the principles set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

The plaintiffs now move the Court to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *Sidney-Vinstein v. A–H Robins Co.,* 697 F.2d 880 (9th Cir.1983); *Parks v. "Mr. Ford,"* 68 F.R.D. 305 (D.Penn. 1975). The motion requests the Court to alter its judgment denying recalculation of past benefits due both named plaintiffs and class members, and to amend it to require the Secretary to notify all class members of their right to have present benefits recalculated in compliance with the Court's decision. In light of the arguments raised by plaintiffs in two memoranda submitted in support of the motion, the judgment will be altered to reverse and remand the claims of certain unnamed plaintiffs to whom underpayments are due, and to compel notice to all class members of the right to recalculation of benefits, both past and present.

*The Named Plaintiffs*

The named plaintiffs in these two consolidated cases have all received an unfavorable final decision of the Secretary. *Bouchard v. Secretary,* 583 F.Supp. at 946. Therefore, all have exhausted the administrative remedies available to them and have properly sought judicial review. 42 U.S.C. § 405(g). Katherine Bouchard and John Svoboda currently have income which exceeds the couple limits for benefits without regard to the computations at issue and thus no longer receive payments under the Social Security program. Midas Turgeon is now deceased, but his widow is currently a recipient under the program. George Stephens, Carolyn Barry and Lillian Pinnex are now receiving benefits as members of eligible couples, and Adolph DeDeurwaerder, recently widowed, now receives payments as an eligible individual.[1] Therefore, none of the named plaintiffs benefited from the prospective relief awarded.

In *Chevron Oil Co. v. Huson,* 404 U.S. at 97, 92 S.Ct. at 350, the Supreme Court directed that a new rule of law should not be applied retroactively where a court found that three factors weighed against it. In the first factor, non-retroactivity is advised where a new principle of law overrules past precedent or where an issue of first impression has not been clearly foreshadowed. *Id.* at 106, 92 S.Ct. at 355. The Court concluded that the principle of law defined in its memorandum was not clearly foreshadowed and thus weighed against retroactive application. *Bouchard v. Secretary,* 583 F.Supp. at 955. Plaintiffs argue this finding is erroneous, but I have not altered my opinion. *Cf. Simpson v. Director, Office Workers Compensation Programs, et al.,* 681 F.2d 81 (1st Cir.1982) (it remains for the court to determine whether recent decision weighs for or against retroactivity). I therefore continue to adhere to the original finding that the first *Chevron* factor weighs against a discretionary retroactive application of the Court's decision. However, plaintiffs raise an argument which tempers the effect of the above finding and weighs in favor of remanding certain cases to the Secretary for recalculation.

Under the second *Chevron* test, a court must determine whether retroactivity would enhance or retard the operation of its decision. 404 U.S. at 106, 92 S.Ct. at 355. In the original Memorandum, this Court concluded that ordering recalculation of past benefits for all named plaintiffs and class members would frustrate the Congressional goal of fostering cooperation between the states and the federal government. *Bouchard v. Secretary,* 583 F.Supp. at 955. However, plaintiffs correctly point out a statutory provision which states:

> [w]henever the Secretary finds that more or less than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall ... be made by appropriate adjustments in future payments to such individual ... or his eligible spouse.

42 U.S.C. § 1383(b)(1). Congress intended that

---

**1.** Subsequent to their motion, plaintiffs moved to remove Lottie Sypulski from the named plaintiffs seeking relief. Plaintiff is now deceased, leaving no eligible widower.

if less than the correct amount of benefits [has] been paid, the Secretary would pay the balance due the underpaid individual. If the individual dies before the amount due has been paid to him, ... the amount due would be paid to his eligible spouse, if there is one, and the payment would not be taken into account in determining the spouse's need under the program. Underpayments, however, would not be paid to the estate of a deceased individual since it would not further the objective of meeting the current needs of the individuals.

H.R. No. 231, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4989, 5141. The Secretary incorporated this statutory mandate into a series of regulations. 20 C.F.R. §§ 416.535 through 416.550. Where an individual has applied for benefits and has met all conditions of eligibility, 20 C.F.R. § 416.536, "an underpayment adjustment ... is made where a recipient received less than the correct amount of supplementary security income benefits...." 20 C.F.R. § 416.535. Significantly, the Secretary has defined underpayments quite specifically.

An underpayment can occur only with respect to a period for which a recipient filed an application ... for benefits and met all conditions of eligibility thereof. An underpayment, *including any amounts of state supplementary payments* which are due and administered by the Social Security Administration, is: (a) nonpayment, where payment for a quarter (or month, where applicable) was due but not made, and (b) payment of less than the amount due for any quarter (or month, where applicable).

20 C.F.R. § 416.536 (emphasis supplied). Thus, Congress and the Secretary herself recognized and provided for "retroactive" payment where benefits, both federal and state, had been denied or reduced because of erroneous calculation by the Secretary.

This Court concluded that the Secretary's method of calculating optional state supplementary SSI payment for a recipient with deemed spousal income was erroneous at

law. *Bouchard v. Secretary*, 583 F.Supp. at 953. The operation of that rule would be enhanced by remanding cases of applicants whose benefits were reduced or denied by virtue of the incorrect calculation. *Chevron Oil Co. v. Huson*, 404 U.S. at 106, 92 S.Ct. at 355. Additionally, remand would be consistent with the statutory and regulatory provisions directing adjustment for underpayment. Therefore, the second *Chevron* factor weighs heavily in favor of remanding the claims of the named plaintiffs to the Secretary.

■ In addition, the number of persons involved and the amounts due them are small. The recalculation of past benefits due, and the payment thereof, will benefit the intended beneficiaries of the federal program and will not unduly burden either the federal administrators or the Commonwealth of Massachusetts. *Id.* at 107, 92 S.Ct. at 355–356 (court may deny retroactive application of decision where to do so would produce substantial inequitable results). Therefore, this Court shall order reversal and remand for Midas Turgeon, George Stephens, Carolyn Barry, Lillian Pinnex and Adolph DeDeurwaerder, who, by the terms of both statute, 42 U.S.C. § 1383, and regulation, 20 C.F.R. § 416.-542, are entitled to receive the underpayments due them. The claims of those named plaintiffs who have neither current eligibility nor a current eligible surviving spouse, namely Katherine Bouchard and John Svaboda shall not be subject to remand.

*Class Relief*

These same arguments would seem to apply with equal force to the class at large. Certainly, the Court's holding and the explicit statutory provision for adjustment of underpayment would be enhanced if the Secretary were ordered to recalculate benefits for all class members. Further, the equities, despite potentially large numbers of applicants and significant sums of money, must weigh in favor of an order to identify and recalculate benefits for all class members. *Bouchard v. Secretary*,

583 F.Supp. at 956. Upon reconsideration of the interests at stake, and in light of the data submitted by both parties, I believe that some relief must be extended to the class.

The class, as certified by Order of the Court on January 11, 1982, consists of all Massachusetts residents who subsequent to January 18, 1977:

a. Have applied to the secretary for or have received SSI benefits and have been found categorically eligible for SSI benefits; and

b. Have resided in the same household with an ineligible spouse whose income is subject to the statutory deeming requirements set out in 42 U.S.C. § 1382c(f)(1); and

c. Have "countable income" below the Massachusetts SSI standard for an eligible individual; and

d. Whose countable income, together with the countable income of their ineligible spouses is lower than the Massachusetts SSI standard for an eligible couple.

A court has a duty to fashion appropriate equitable relief for a class which prevails on the merits of the claim presented. *Shannon v. United States Civil Service Commission*, 444 F.Supp. 354 (N.D.Cal. 1977), and this duty extends to class actions brought pursuant to the Social Security Act. *Gray Panthers v. Schweiker*, 716 F.2d 23 (D.C.Cir.1983); *Liberty Alliance of the Blind v. Califano*, 568 F.2d 333 (3rd Cir.1977); *Mayburg v. Heckler*, 574 F.Supp. 922 (D.Mass.1983), *affirmed in part, reversed in part*, subnom *Mayburg v. Secretary of Health & Human Services*, 740 F.2d 100 (1st Cir.1984). This Court has held that the Secretary erroneously calculated the optional state supplementary payments due class members. *Bouchard v. Secretary*, 583 F.Supp. at 953. Having so found, the relief which would best serve the interests of the class members· would be an order remanding all claims for recalculation of benefits from January 18, 1977 onward. However, a court's duty to carve equitable class relief must take into ac-

count not only the needs of class members, but also the obstacles any relief may present to the governmental bodies who must comply with a court order. *Shannon v. United States Civil Service Commission*, 444 F.Supp. at 368 (appropriate relief requires consideration of fairness of retroactive relief, deprivations suffered by plaintiff class, and the burden of compliance on the government). In the case at bar, there are three such considerations: the difficulty of identifying all members of the class; the administrative burden which recalculation would entail; and the fiscal impact on the Commonwealth of Massachusetts.

*Identification*

The identification of class members entitled to relief would fall on the Secretary. 42 U.S.C. § 1382e(b)(2); *Bouchard v. Secretary*, 583 F.Supp. at 952 (under Federal-State agreement, Secretary accepts all administrative duties and costs associated therewith). The Secretary insists the task would be unduly burdensome. She represents that identification of all recipient-members of the class would require extensive computer reprogramming supplemented by a tedious manual search. As regards applicant members who were wrongfully denied benefits, she argues there is no method available to identify them with any certainty. Defendant's Memorandum In Opposition To Plaintiff's Motion at 5.

It has been held that the burdensomeness of any combined computer and manual search is insufficient to overcome the harm suffered by persons wrongfully deprived of benefits. *Pope v. Railroad Retirement Board*, 672 F.2d 972, 975 (D.C.Cir.1982) (retroactive relief ordered for class of 60,000). Yet, this Court recognized the enormity of the task in its prior Memorandum, *Bouchard v. Secretary*, 583 F.Supp. at 955, and the potential impact on the Social Security Administration's resources cannot be ignored.

Plaintiffs concede that the relief requested is essentially notice relief, for any recipient or past applicant who is apprised of the right to recalculation of past benefits

would have to prove class membership before the Secretary would be required to process the claim. Plaintiffs' Supplemental Memorandum In Support Of Motion at 19. The goal of any relief granted must be to ensure that all potential class members are aware of the right created by the Court's Order. This goal may be met in a very simple, inexpensive manner.

The class actually encompasses two subclasses: present recipients whose benefits are now and have been less than what is due them, and applicants who were wrongfully denied benefits because of the Secretary's incorrect calculation method. The Secretary maintains it is virtually impossible to identify all class members who presently receive benefits. But if the Secretary were to include appropriate written notice in the regular mailing of all benefit checks, the potential class members would be reached. A one-time-only, direct mail notification to all persons presently receiving benefits under the program ensures that all recipient-members of the class will receive appropriate notice of relief. It will not be costly, since written notification could be included as part of a regular agency mailing.[2] It therefore represents the least expensive manner of notifying all potential class members of their right to have both present and past benefits recalculated in accordance with the Court's Order.

The direct mailing, however, will not reach those who claimed but were denied benefits after January 18, 1977. Defendant maintains the impossibility of identifying all members of this subclass of applicants, and I must accept that representation. Therefore, I shall order the Secretary to provide reasonable notice to the general public by posting notices of the relief granted in prominent areas in all Social Security offices in the Commonwealth, and by causing the notice to be published in newspapers of general circulation throughout the Commonwealth for seven (7) consecutive days.

All notices, whether mailed, posted or published, shall inform the reader of the scope and impact of the Court Order, the class so benefited, the right of both recipients and applicants to have past and present benefits recalculated, and the steps the reader must take to bring his/her claim to the attention of the agency. The Secretary shall submit to the plaintiffs a sample notice within seven (7) days of the date of this Memorandum. If the plaintiff has substantial disagreement with the notice as offered, and if the parties are incapable of resolving any significant dispute which arises, they are to present their proposed notice to the Court within fourteen (14) days of the date of this Memorandum, at which time the Court shall determine the final form of notice. In any event, published and posted notice provisions shall be instituted within thirty (30) days of the date of this Order. Direct mailing of notices shall be included in the next regular agency mailing or within forty-five (45) days of the date of this Order.

I emphasize the written notice must state that the Court has ordered a permanent change in calculation methodology, effecting not only benefits received from January 18, 1977 to the present, but also future benefits as well. Defendant specifically objected to plaintiffs' request for an order to notify class members of their right to have present benefits recalculated. She argues such an order is unnecessary since she has every intention of complying with the original order of prospective relief. Defendant's Memorandum In Opposition To Plaintiffs' Motion at 7. Plaintiffs have expressed concern as to these intentions. I share that concern. See Memorandum and Order issued this date on Plaintiffs' Motion To Cite Defendant For Contempt. Therefore, I conclude the written notice must notify the reader of the right to have present benefits recalculated.

*Recalculation*

The Secretary further objected to any class-wide retroactive relief because recalculation of so many claims would unduly burden agency resources. In its origi-

2. The Secretary is free, of course, to provide written notice in a separate mailing.

nal Memorandum, the Court expressed the same concern. *Bouchard v. Secretary,* 583 F.Supp. at 955–56. However, upon reconsideration, I conclude that the administrative cost involved in recalculating class members' benefits is not so great as to outweigh the interests of the class. *Pope v. Railroad Retirement Board,* 672 F.2d at 975; *Liberty Alliance for the Blind v. Califano,* 568 F.2d at 355.

By the Secretary's own reckoning, the total number of recipients and applicants affected by the Court Order for the years 1977 through 1983 amounts to 2,500. Defendant's Memorandum In Opposition To Plaintiffs' Motion at 6–7. The task of recalculation would at first seem overwhelming, were it not for two points. First, plaintiff suggests, and the Court concurs, that if recalculation of past benefits were conducted in conjunction with the Secretary's periodic review of all recipients' benefits (and, for that matter, in conjunction with the recalculation of present benefits the Secretary insists will be conducted), the administrative burden would be lessened, at least as regards recipient-members of the class. Secondly, it has been held that the administration cost associated with reinstating benefits to a class of over 16,000 would be *de minimus. Foggs v. Block,* 722 F.2d 933, 941 n. 6 (1st Cir.1983) (order reinstating food stamps not administratively burdensome). I believe this Court overestimated the task involved. I therefore conclude that the administrative burden of recalculating benefits for the class is not so great as to outweigh the right of class members to receive the amount by which they have been underpaid.

*Impact*

 The final consideration to be addressed is the impact a class-wide order would have on the Commonwealth; it is a consideration which weighed heavily on the Court's mind. *Bouchard v. Secretary,* 583

F.Supp. at 956. It is also a subject on which the parties are poles apart.

The Secretary insists the total amount of past state supplementary SSI payments at issue exceeds $12 million. This figure is based upon the maximum allowable amount of state supplementary benefits, assuming the class for those years consists of 1,100 recipients and 1,400 applicants. It also assumes a ratio of seven disabled class members to every one blind class member and every three aged class members. Defendant's Memorandum In Opposition To Motion at 7. The plaintiffs, in contrast, estimate that for a class consisting of 1,600–1,800 recipients and an equal number of applicants, the figure is closer to $3.6 million. They base this lower estimate on a number of factors, all of which are persuasive.[3]

First, all potential beneficiaries of the Order must prove membership in the class. The class is narrowly drawn, and any potential beneficiary would bear a heavy burden of proving entitlement. Second, in order to qualify for class membership, the potential beneficiary must still be a recipient under the program or be survived by an eligible spouse. 20 C.F.R. § 416.1152. If the named plaintiffs are any indication, this requirement will reduce significantly the number of persons entitled to receive adjustment of underpayments.[4] Third, the Secretary's regulations provide that recipients may receive no more under the deeming regulations than they would if their income had not been subject to the deeming of spousal income. 20 C.F.R. § 416.1163(c). This "windfall proviso" certainly will reduce the total amount of underpayments due. Fourth, the plaintiffs estimate that a significant number of past applicants applied for benefits more than once. Although I find plaintiffs' estimate of a 50% reduction very generous, I note that the Social Security Act does not limit the number of times an individual may apply for

---

**3.** The Court notes both parties based their estimates on underpayments due for the years 1977 through 1983. The retroactive application of the Court's ruling, therefore, will be effective only as of January 18, 1977.

**4.** Of the eight original named plaintiffs, only five will be entitled to adjustment of underpayments.

benefits; thus, the number of persons affected by the Court Order and therefore the amount of underpayments due is subject to reduction. Finally, not all class members will be entitled to the maximum amount of state supplementary payments. 20 C.F.R. § 416.1163(c)(2)(iii); *Bouchard v. Secretary*, 583 F.Supp. at 949.

For all these reasons, I find that the estimated amount submitted by plaintiffs, based on higher numbers of potential class members but reflecting factors which reduce the total amount due, is the more reasonable. The question remains as to whether even this reduced amount would unfairly burden the Commonwealth.

Massachusetts had no hand in the calculations which gave rise to this lawsuit. By the terms of the statute, a participating state relinquishes all administrative control over the program. 42 U.S.C. § 1382e. This Court previously has expressed concern about the impact class-wide relief would have on a program designed, in part, to foster cooperation between state and federal authorities to the betterment of the programs' intended beneficiaries. *Bouchard v. Secretary*, 583 F.Supp. at 955. But, under the Federal-State agreement, the Commonwealth agrees to accept the fiscal responsibility for all payments made pursuant to the statute and regulations. *Id.* at 948. As noted above, the regulations mandate the adjustment of benefits both underpaid and overpaid. 20 C.F.R. § 416.535. Plaintiffs argue that the Commonwealth has benefited from the regulatory recoupment provision. In 1978 alone, the Secretary recovered over $4 million which had been overpaid, and returned it to the state. Plaintiffs' Supplemental Memorandum at 25, citing Attachments, Defendant's Answers to Plaintiffs' Second Set Of Interrogatories. As logic dictates, where a state accepts the benefit of recoupment of overpayments under the program, it must also accept the concomitant fiscal responsibility for the underpayments rightfully due its needy citizens. I therefore conclude that the potential financial impact upon Massachusetts will be neither unexpected nor excessive. Accordingly, it does not present an insurmountable obstacle to class relief. *Cf. Liberty Alliance for the Blind v. Califano*, 568 F.2d at 333 (recalculation of mandatory state supplementary payments for blind recipients ordered for class).

*Conclusion*

In sum, I find the burdens of compliance with a class-wide order of notice relief do not outweigh the harm which would be suffered by class members if relief were withheld. Under an analysis identical to that undertaken for the named plaintiffs, all class members would benefit from adjustment for underpayments of optional state supplementary payments. Adjustment is consistent with the Secretary's regulations, 20 C.F.R. § 416.536, and would be in keeping with the statutory mandate. 42 U.S.C. § 1383(b)(1). The SSI program was designed to meet the present needs of its beneficiaries. H.R. No. 231, *supra* p. ——. That need is no less for an unnamed class member than for a named plaintiff. I therefore conclude that class relief is both appropriate and just. F.R.Civ.P. 23. The Secretary shall take steps to provide reasonable notice in accordance with the terms of this Memorandum.

An appropriate Order shall issue.

## JUDGMENT AND ORDER

In accordance with the accompanying Memorandum issued this date, it is hereby Ordered, Adjudged and Decreed that the Judgment and Order of April 2, 1984, *Bouchard v. Secretary of Health & Human Services*, 583 F.Supp. 944 (D.Mass. 1984), be altered and amended in the following manner.

1. The cases of plaintiffs Midas Turgeon, George Stephens, Carolyn Barry, Lillian Pinnex and Adolph DeDeurwaerder are hereby REVERSED and REMANDED to the Secretary of Health and Human Services for calculation of underpayments due them, in accordance with the terms of the Social Security Act, 42 U.S.C. § 1383(b)(1), and the regulations promulgated thereunder, 20 C.F.R. §§ 416.535 through 416.550.

2. The Secretary is hereby Ordered:

a) to notify in writing all present recipients of Supplemental Security Income, 42 U.S.C. §§ 1381 *et seq.*, of the right of class members, as defined by Order of the Court dated January 11, 1982, to have their optional state supplementary payment recalculated; notify them of the right to receive adjustment for underpayments due them, effective January 18, 1977; and further inform the reader of the steps necessary to bring a claim to the attention of the Social Security Administration, all in accordance with the Orders of the Court issued April 2, 1984, *Bouchard v. Secretary,* 583 F.Supp. 944, as amended this date. Written notice shall be included in the next regular mailing of benefit checks or within forty-five (45) days of the date of this Order if the Secretary chooses to provide written notice by separate mailing;

b) to post notices informing class members of their rights under the Orders of the Court. The notices shall be of adequate size and placed in prominent locations in all offices of the Social Security Administration in the Commonwealth of Massachusetts within thirty (30) days of the date of this Order;

c) to cause to be published notices informing class members of their rights under the Orders of the Court. The notices shall be published in newspapers of general circulation throughout the Commonwealth of Massachusetts for seven (7) consecutive days. Publication shall begin within thirty (30) days of the date of this Order;

d) to submit to the plaintiffs' counsel within seven (7) days of the date of this Order, a draft of the notice ordered, to comply in full with the requirements set forth in the accompanying Memorandum. If the parties fail to agree substantially on the content of the notice, either party or both parties may submit the issue to the Court no later than fourteen (14) days from the date of this Order, at which time the Court will determine the final content of the required notice.

It is So Adjudged and Ordered.

### MEMORANDUM AND ORDER

#### November 15, 1984

The Secretary of Health and Human Services ("Secretary") has moved to stay the Orders of the Court of April 2, 1984, *Bouchard v. Secretary,* 583 F.Supp. 944 (D.Mass.1984) and September 19, 1984, pending their appeal to the United States Court of Appeals for the First Circuit. The Secretary alternatively requests the Court to grant an extension of the deadlines specified in the latter Order for the mailing, posting and publication of notice to class members. Fed.R.Civ.P. 62(c).

Under the standards of this Circuit, a court may exercise its discretionary power to stay its own orders if the movant makes

(1) a strong showing that he is likely to succeed on the merits of the appeal; (2) a showing that unless a stay is granted he will suffer irreparable harm; (3) a showing that no substantial harm will come to other interested parties; and (4) a showing that a stay will do no harm to the public interest.

*Martinez Rodriguez v. Jiminez,* 537 F.2d 1, 2 (1st Cir.1976) (citations omitted). The Secretary has raised several points addressing these four elements.

#### A. *Irreparable Harm, Balance of Hardships and Public Interest*

The Secretary's arguments on the latter three elements rest largely on her contention that the Orders unduly burden an already overburdened agency. Essentially, the Secretary maintains the relief ordered imposes a burden of such magnitude that any harm which may accrue to beneficiaries of the Orders were a stay granted is far outweighed by the harm which both the agency and the public interest would suffer if the Orders were allowed to stand.

This Court carefully considered the burden any affirmative order would have on the defendant's agency and concluded that, on balance, the scales tipped in favor of the beneficiaries of the order. I see nothing in defendant's present arguments to convince me otherwise.

Likewise, the Secretary's attempt to equate the agency's interest with the public interest, and her attempt to demonstrate irreparable harm falls short. This Court previously found that claims of administrative inconvenience and expense were not so compelling as to avoid the imposition of relief. Additionally, the data submitted to the Court on the issue of recoupment, Memorandum and Order of September 19, 1984 at 16, belies the Secretary's insistence that her power to recoup overpayments is illusory.

Finally, the Secretary's reliance on *Lopez v. Heckler, infra,* is misplaced. In *Lopez,* the district court ordered immediate reinstatement of interim benefits to all class members pending administrative review. Thus, the agency was obliged to institute payment prior to any determination of eligibility. In contrast, a potential member of the *Bouchard* class must prove entitlement before receiving underpayments. Therefore, insofar as defendant relies on *Lopez* to demonstrate irreparable harm, the case is inapposite.

In sum, I find the Secretary has failed to demonstrate that irreparable harm will accrue to either the agency or the public interest if the stay is not granted or that any harm her agency may suffer would sufficiently outweigh the harm incurred by class members if a stay were granted.

### B. *Likelihood of Success on the Merits*

The Secretary cites three grounds on which she contends she will successfully appeal this case.

First, the Secretary attacks the basis of the Court's decision. Her memorandum merely summarizes the same arguments the Court fully considered and rejected. *Bouchard v. Secretary,* 583 F.Supp. 944. Therefore, the argument based on defer-

ence to the Secretary's interpretation of her own regulations does not provide sufficient grounds for the instant motion.

Second, the Secretary argues relief is not available to any class member who has not exhausted administrative remedies. I fully considered the issue of exhaustion over two years ago when the class was first certified. Memorandum and Order of January 11, 1982. The most recent Supreme Court case, *Heckler v. Ringer,* — U.S. —, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) does not undermine the reasoning employed to certify the class.[1] Therefore, the Secretary has not made a strong showing that she is likely to succeed in appealing the Orders on the basis of the exhaustion doctrine.

The Secretary's final argument, however, raises a serious legal question. She argues the Court is without jurisdiction to award relief to individuals whose claims are time-barred by the sixty-day requirement of the Social Security Act. 42 U.S.C. § 405(g).[2] Recent case law indicates that the sixty-day requirement is jurisdictional, *see Heckler v. Lopez,* — U.S. —, 104 S.Ct. 2164, 80 L.Ed.2d 548 (1984) (stay granted as to the relief awarded to those individuals whose claims were time-barred by the sixty-day requirement), and therefore overrides any equitable considerations. I believe the Secretary's contention based on the sixty-day requirement raises an issue of sufficient seriousness to require a partial stay of the Court's Orders.

The history of the *Lopez* case is complex and lengthy. *Lopez v. Heckler,* 572 F.Supp. 26 (C.D.Cal.1983); *motion to stay denied,* 713 F.2d 1432 (9th Cir.1983); *partial stay granted,* 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (Rehnquist, J.) (1983); *motion to vacate stay denied,* — U.S. —, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983) (Justices Stevens and Blackmun dissenting

---

**1.** The *Ringer* court found the respondents' claims for Medicare reimbursement subject to the exhaustion requirement, but specifically noted the claimants failed to demonstrate the futility of pursuing administrative relief. — U.S. —, 104 S.Ct. at 2023, 80 L.Ed.2d at 638.

**2.** The Social Security Act provides:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, ... may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such action....

42 U.S.C. § 405(g).

in part, concurring on the issue of the sixty-day requirement); *preliminary injunction affirmed*, 725 F.2d 1489 (9th Cir. 1984); *partial stay granted*, — U.S. —, 104 S.Ct. 2164, 80 L.Ed.2d 548 (1984) (stay granted as to the relief awarded to those individuals whose claims were time-barred by the sixty-day requirement). Yet, one principle emerges: the sixty-day requirement retains viability as a jurisdictional prerequisite even in class actions for which a court waives the requirement of exhaustion. See dissent of Justice Stevens, — U.S. at —, 104 S.Ct. at 221, 78 L.Ed.2d at 218 and Memorandum Order, — U.S. —, 104 S.Ct. 2164, 80 L.Ed.2d 548.

In the instant case, the named plaintiff Katherine Bouchard initiated legal action on March 17, 1978. The class as certified reached all Massachusetts residents who, subsequent to January 18, 1977, have applied to the Secretary for or have received benefits and have been categorically eligible for benefits under the Supplemental Security Income program.[3] In light of the argument the Secretary now raises, the order of relief may well have extended to persons over whose claims the Court has no jurisdiction. Consequently, the Secretary has raised an issue of sufficient seriousness, and has demonstrated a strong likelihood of success on appeal of the issue of the effect the sixty-day requirement may have on the Court's Order.

Accordingly, the motion to stay the Orders of the Court of April 2, 1984, *Bouchard v. Secretary*, 583 F.Supp. 944, and September 19, 1984 is hereby GRANTED insofar as the Orders extend to persons whose benefits under the Supplemental Security Income program were terminated or denied prior to January 16, 1978[4] and who did not initiate administrative remedies at all, or did not complete the administrative process by that date. In all other respects the motion is DENIED.

It is So Ordered.

---

**3.** On January 18, 1977, the Secretary's regulations governing computation of benefits where spousal income is deemed became effective. 42 Fed.Reg. 3314.

**4.** January 16, 1978 is sixty days before the date on which Katherine Bouchard filed her action.